**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ESTER MUKESHA<br><br>Plaintiff,<br><br>v.<br><br>SUNRISE SENIOR LIVING MANAGEMENT, INC., *doing business as* Sunrise of McCandless, and LEGEND SENIOR LIVING, LLC, *doing business as* Hemsley House of McCandless, *formerly known as* Sunrise of McCandless<br><br>Defendants. | ) | Civil Action No. 2:25-1878<br>District Judge Nora Barry Fischer |

**<u>MEMORANDUM OPINION</u>**

I. INTRODUCTION

In this employment civil action, Plaintiff Ester Mukesha ("Plaintiff" or "Mukesha") brings claims for disability discrimination, failure to accommodate, and retaliation pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951, *et seq.* ("PHRA") in Counts I through VI of the Amended Complaint (ECF No. 20); Restraint, Interference and Retaliation in Violation of the Family Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.* ("FMLA") in Count VII; and Common Law Wrongful Termination in Violation of Public Policy under the Pennsylvania Workers' Compensation Act, 77 P.S. § 1, *et seq.*, in Count VIII against Defendants Sunrise Senior Living Management, Inc., ("Sunrise") and Legend Senior Living, LLC ("Legend") (collectively "Defendants"). Presently before the Court is Defendant Sunrise's Renewed Motion to Compel Arbitration and to Stay Civil Action (ECF Nos. 26 & 27), supporting brief (ECF No. 28), Plaintiff's Brief in Opposition (ECF No. 33), Defendant's Reply Brief (ECF No. 35), and Plaintiff's Sur-

Reply (ECF No. 38). The Court also considers Defendant Legend's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 29), Legend's Brief in Support (ECF No. 30), Plaintiff's Opposition Brief (ECF No. 34), Legend's Reply Brief (ECF No. 36), and Plaintiff's Sur-Reply (ECF No. 38). After careful consideration of the parties' arguments and relevant documents, Sunrise's Motion to Compel Arbitration and Stay Civil Action (ECF No26 & 27) is granted, and Legend's Motion to Dismiss (ECF No. 29) is denied, as moot, for the following reasons.

II. RELEVANT FACTUAL BACKGROUND

On February 3, 2024, Sunrise hired Plaintiff as a Care Manager at the senior living facility located at 900 Lincoln Club Drive in McCandless. (Amended Compl., ECF No. 20 ¶ 34). As a condition of employment, Plaintiff was required to agree and sign the Sunrise Senior Living Dispute Resolution Agreement ("Resolution Agreement" or "Agreement").[1] (ECF No. 28-1 at 2-3). The Resolution Agreement set out three steps to resolve legal disputes with Sunrise: Step One: Talking with Each Other; Step Two: Non-Binding Mediation; and Step Three: Binding Arbitration. (ECF No. 28-1 at 2). The Resolution Agreement specifically provided as follows:

> We both agree to use the three-step program in this agreement to resolve any and all legal disputes that may come up between us during or after your employment that arise out of or relate in any way to your employment or its termination, except those disputes excluded below. This applies to legal disputes you may have against Sunrise Senior Living Management, Inc., its parents, subsidiaries and affiliates (collectively "Sunrise") and Sunrise's officers, directors, shareholders, employees and agents. It also applies to legal disputes Sunrise may have against you. **We both agree to waive our right to bring any such legal disputes before a judge or jury, … and instead agree to have these legal disputes resolved exclusively on an individual basis under this agreement.**

[1] In its Renewed Memorandum in Support of Sunrise Senior Living Management Inc.'s Motion to Compel Arbitration and Stay Civil Action, Sunrise attaches the Sunrise Senior Living Dispute Resolution Agreement. (ECF No. 28-1 at 2-3). Sunrise filed a duplicate Memorandum in Support at ECF No. 31, where the Resolution Agreement is filed as part of the Memorandum in Support. *See* ECF No. 31 at 11-13.

(ECF No. 28-1 at 2) (boldface in original).

The excluded claims include those filed in court prior to the signing of the Resolution Agreement; "claims that may not by law be covered by an arbitration agreement, such as workers compensation claims, unemployment insurance claims, and certain whistleblower retaliation claims; and [] claims subject to another arbitration procedure." (*Id.* at 3). The exclusion portion of the Resolution Agreement concludes that it does not affect an employee's right to file a charge or complaint with the EEOC or other government agencies but provides that an employee "may seek monetary relief only through the steps set forth in this agreement." (*Id.*).

Next, the Resolution Agreement provides that it "shall be governed by the Federal Arbitration Act and the law of the State of Delaware (without regard to its choice of law principles), unless otherwise required by the law of the state in which you primarily reside and work." (*Id.*).

The Resolution Agreement concludes, in relevant part, as follows:

> ***Agreement:*** You acknowledge that you have had an opportunity to review the agreement and to discuss any questions you have regarding the agreement with your Talent Acquisition manager or your hiring manager. You and Sunrise agree to be bound by the agreement, which becomes effective on the date you sign below.

(*Id.*) (boldface in original). Plaintiff's electronic signature appears below this language, dated February 1, 2024, at 9:53 p.m., accompanied by the following:

> (Each party agrees that the electronic signatures of the parties included in this document are intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic signature means any electronic sound, symbol, or process attached to or logically associated with a record and executed and adopted by a party with the intent to sign such record.)

(*Id.*). Finally, on behalf of Sunrise, the document is agreed to by Mary Kay Gribbons, Chief Human Resources Officer. (*Id.*).

Plaintiff initially alleges that Sunrise managed the day-to-day operations of the facility during Plaintiff's employment, which commenced on February 3, 2024, and was terminated on December 30, 2024. (ECF No. 20 ¶¶ 3, 35, 57). The Amended Complaint also indicates that as of the end of May 2025, Legend acquired control of the facility. (*Id.* ¶ 19). Plaintiff further alleges, however, that before Legend assumed management of the facility at the end of May 2025, an Operations Transfer Agreement ("Transfer Agreement") reflects that prior to the formal transition in late May, the "facility was already being operated through a layered relationship among Sunrise, Legend, and other identified transition entities, rather than through a simple one-company structure." (*Id.* ¶¶ 5, 16). Plaintiff continues that the Transfer Agreement provides that Legend is the current operator of the facility, and that Sunrise manages the facility for the benefit of Legend. (*Id.* ¶ 17). The Transfer Agreement is dated "as of May 28, 2025" and states that Sunrise will transfer operational control effective at 12:01 a.m. on May 29, 2025. (*Id.* ¶ 19). A copy of the Transfer Agreement is not attached to the Amended Complaint, and therefore, it is unclear from the four-corners of the Amended Complaint whether Legend had any involvement with Plaintiff during her employment.

Moving to the facts underlying Plaintiff's claims, she alleges that she sustained a work injury on September 7, 2024 while employed at the facility. (*Id.* ¶ 39). She fell while responding to a medical emergency, injuring "her leg and/or lower extremity," and was transported to UPMC Passavant for treatment. (*Id.* ¶¶ 39-38). Shortly thereafter, Plaintiff filed a workers' compensation claim, "which was accepted." (*Id.* ¶ 41). Plaintiff was placed on a brief medical leave of approximately four days before being medically released to return to work with restrictions. (*Id.* ¶ 43). Following her injury and return with light duty restrictions, and after her repeated requests, Defendants refused to restore Plaintiff to a full schedule consistent with her restrictions, failed to

provide leave-related protections, and terminated her employment on December 30, 2024, for reasons that Plaintiff alleges are pretextual. (*Id.* ¶¶ 47-58, 59-66).

III. PROCEDURAL HISTORY

On June 30, 2025, Plaintiff dual-filed a Charge of Discrimination with the EEOC and the PHRC, expressly naming both Sunrise and Legend. (*Id.* ¶ 9, 11). On September 5, 2025, the EEOC issued Plaintiff a Notice of Right to Sue letter, and the PHRC thereafter closed the corresponding matter and issued Plaintiff a Notice of Complainant's Rights. (*Id.* ¶ 12, 13).

On December 4, 2025, Plaintiff filed the original Complaint in this civil action. (ECF No. 1). The parties filed a Stipulation Extending Time to file Responsive Pleading (ECF No. 8), which the Court granted on April 15, 2026, extending the Defendants' time for filing a response to May 1, 2026. (ECF No. 9). On May 1, 2026, Sunrise filed a Motion to Compel Arbitration and Stay Civil Action, and Brief in Support (ECF Nos. 12 & 13), followed by a Motion to Dismiss and Brief in Support filed by Legend. (ECF Nos. 14 & 15). Thereafter, Plaintiff filed the operative Amended Complaint on May 20, 2026 (ECF No. 20), and the Court entered an Order that same day denying Defendants' initial motions, as moot. (ECF No. 21). As noted above, the Motions currently at bar, along with their supporting briefs, were refiled on June 17, 2026 (ECF Nos. 26, 27, 28, 29, 30, 31 & 32), along with Plaintiff's Opposition briefs on July 8 and 9, 2026 (ECF Nos. 33 & 34), Defendants' Reply briefs on July 22, 2026 (ECF Nos. 35 & 36), and Plaintiff's Sur-Reply to both Opposition Briefs on August 5, 2026. (ECF No. 38).

IV. LEGAL STANDARDS

A. <u>Motion to Compel Arbitration and the Federal Arbitration Act</u>

The Resolution Agreement provides for final and binding arbitration pursuant to the Federal Arbitration Act ("FAA"). (ECF No. 281 at 2-3). The FAA "reflects a strong federal policy

in favor of the resolution of disputes through arbitration." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (internal quotations omitted). *See also MZM Constr. Co., Inc. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 397 (3d Cir. 2020) ("Following the enactment of the FAA, the Supreme Court has steadily advanced [the policy in favor of compelling arbitration over litigation] by guarding against unwarranted judicial interference with arbitration."). "The primary substantive provision of the FAA, [Section 2], provides that a written agreement to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." *Coulter v. Experian Info. Sols., Inc.*, Civil Action No. 20-1814, 2021 WL 735726, at *3 (E.D. Pa. Feb. 25, 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2)). Section 2 "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Therefore, the FAA requires federal courts to "'enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms.'" *Berryman v. Newalta Env't Servs., Inc.*, Civil Action No. 18-793, 2018 WL 5723290, at *3 (W.D. Pa. Nov. 1, 2018) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)).

When evaluating a motion to compel arbitration, the federal court is "limited to a narrow scope of inquiry." *Id.* (quoting *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012)). "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyds's*, 584 F.3d 513, 522 (3d Cir. 2009).

B. <u>Motion to Dismiss</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain enough facts to state a claim to relief that is plausible on its face." *Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility exists somewhere between "possible" and "probable." The former necessitates factual allegations that are "more than merely consistent with a defendant's liability." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). But the latter only demands that the court be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

Detailed allegations are unnecessary, however, the complaint must contain "more than labels and conclusions" or "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

The United States Court of Appeals for the Third Circuit has instructed district courts to utilize a three-step process in evaluating a Rule 12(b)(6) motion. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327 (3d Cir. 2022). The court must first set out the elements of the plaintiff's claim; then, identify and disregard any "formulaic recitation of the elements" or allegations that are "so threadbare or speculative" as to amount to mere conclusory statements; and finally, evaluate "the plausibility of the remaining allegations" by assuming their veracity and "construing them in the light most favorable to the plaintiff[.]" *Id.* at 327-28 (alteration, internal quotation marks, and internal citations omitted).

## V. DISCUSSION

### A. Motion to Compel Arbitration (ECF Nos. 26 & 27)

Here, Plaintiff opposes Sunrise's Motion to Compel Arbitration for a variety of reasons, none of which have merit. At the outset, Plaintiff argues that absent an audit trail underlying the

Resolution Agreement to authenticate Plaintiff's consent, the Court is unable to evaluate Sunrise's assertion that the parties mutually assented to the Agreement. (ECF No. 33 at 5-6). Accordingly, her argument goes to contract formation, and must be decided by the Court. *See Carrone v. UnitedHealth Grp., Inc.*, No. 20-2742, 2021 WL 3520809, at *1 (3d Cir. Aug. 11, 2021).

To determine whether the parties agreed to arbitration, the Court turns to "ordinary state-law principles that govern the formation of contacts." *Kirleis*, 560 F.3d at 160 (quoting *First Options of Chic, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Delaware law, contract formation requires: 1) mutual manifestation of an intention to be bound; 2) terms sufficiently definite to be enforced; and 3) consideration. *Shilling v. Shilling*, 332 A.3d 453, 462-63 (Del. 2024). Plaintiff's argument focuses on the first element, that because there is no audit trail relating to Plaintiff's electronic signature, Plaintiff's consent to the Resolution Agreement is in question, and the case should proceed into limited discovery concerning contract formation. (ECF No. 33 at 6-8).

Delaware, however, has codified the treatment of electronic signatures in its Uniform Electronic Transactions Act, 6 Del. Code Ann. Tit. 6 § 12A-101 *et seq*. ("the Act"). According to the Act, an electronic signature is defined as "an electronic sound, symbol or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id.* at § 12A-102 (9). The Act applies where the parties agree to conduct transactions by electronic means, and that agreement "is determined from the context and surrounding circumstances, including the parties' conduct." *Id.* at § 12A-105(b). Moreover, a "signature may not be denied legal effect or enforceability solely because it is in electronic form[,] and [a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation." *Id.* at § 12A-107(a) & (b). Importantly, an "electronic signature is attributable to a

person if it was the act of the person[,]" and whether the signature is the act of the person "is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement . . . ." *Id.* at § 12A-109 (a) & (b).

Other than the lack of an audit trail, Plaintiff offers no facts to suggest that the electronic signature appearing on the Resolution Agreement is not hers. In the absence of any facts to suggest otherwise, her agreement to arbitrate cannot be denied legal effect simply because her signature appears in electronic form. *Id.* at § 12A-107(a) & (b). Plaintiff does not deny electronically signing the Resolution Agreement when she was onboarded at Sunrise, and she provides no case law indicating that an arbitration agreement is invalid if Sunrise did not provide certain electronic records. Rather, as noted by Sunrise, "Plaintiff cannot point to a single fact that would show her signature was provided by some unlawful means or not provided at all." (ECF No. 35 at 4-5). Where a valid arbitration agreement is apparent from the face of a complaint or incorporated documents, and the Plaintiff has come forward with no additional facts sufficient to place the agreement in dispute, courts should not order discovery, and the Motion to Compel should be considered under the Rule 12(b) standard. *See Young v. Experian Information Solutions, Inc.*, 119 F.4th 314, 317-18 (3d Cir. 2024). Consequently, the Court finds that limited discovery is unnecessary in this case and the Rule 12(b)(6) legal standard, rather than the Rule 56 standard, applies.

Plaintiff further contends that because the Amended Complaint does not attach, rely upon, or incorporate the Resolution Agreement, limited discovery should be permitted. (ECF No. 33 at 5). Even though neither the Complaint nor Amended Complaint reference or attach the Resolution Agreement, it is attached as an exhibit to Sunrise's Brief in Support of Motion to Compel (ECF No. 28-1) and is clearly integral to Plaintiff's claims. As noted by Judge McHugh in the United

States District Court for the Eastern District of Pennsylvania, "[i]t would frustrate the purposes of the [FAA] if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints." *Hewitt v. Rose Group*, Civil Action No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. March 21, 2016), *cited in, Maldonado v. SecTek, Inc.*, Civil Action No. 19-693, 2019 WL 3759451, at *4 (E.D. Pa. Aug. 8, 2019). And as noted by Sunrise, district judges in this circuit have applied a Rule 12(b)(6) standard in similar factual scenarios. *See, e.g.*, *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) (although complaint did not refer to arbitration agreement, court applied Rule 12(b)(6) standard because allegations of complaint fell within scope of the agreement); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315-16 (E.D. Pa. 2017) (finding Rule 12(b)(6) standard applied where arbitration agreement was attached to defendant's motion to compel, rather than mentioned in the complaint, and was "clearly integral to [the plaintiff's claims].").

Next, Plaintiff argues that her claim in Count VIII of the Amended Complaint does not fall within the scope of the Resolution Agreement because it sets out a common law wrongful discharge claim grounded in the public policy of the Pennsylvania Workers' Compensation Act. (ECF No. 33 at 8-9). As such, according to Plaintiff, "[t]he claim is directly tethered to the Pennsylvania Workers' Compensation Act and to the public policy embodied in that statute." (*Id.* at 9). Plaintiff cites no case law to support her argument. Rather, the parties, per the terms of the Resolution Agreement, shall "resolve any and all legal disputes that may come up between [them] during or after [Plaintiff's] employment that arise out of or relate in any way to [Plaintiff's] employment or its termination . . . ." (ECF No. 28-1 at 2). Plaintiff's claim in Count VIII does not seek entitlement to workers' compensation; that claim would clearly be excluded from arbitration

by one of the exclusions listed in the Resolution Agreement because it must be brought before the Pennsylvania Workers' Compensation Board. *See* ECF No. 28-1 at 3. Instead, Plaintiff seeks relief under the common law for alleged retaliation/wrongful discharge *because she filed* a workers' compensation claim. *See* Amended Complaint at Count VIII ¶ 137 ("Pennsylvania recognizes a common-law claim for wrongful discharge where an employer terminates an employee for reporting a workplace injury and pursuing workers' compensation benefits, because such a discharge violates the clear public policy embodied in the Pennsylvania Workers' Compensation Act."). As such, the Court finds that Count VIII does not fall within one of the exclusions set out in the Resolution Agreement, and the entire Amended Complaint falls within the scope of the Agreement.

Plaintiff also briefly argues that Sunrise did not comply with the three-step resolution process set out in the Resolution Agreement. (ECF No. 33 at 9-10). Sunrise responds, however, that it attempted to communicate with Plaintiff and Plaintiff's Counsel in an effort to initiate voluntary mediation pursuant to the three-step process, but this effort was refused by Plaintiff. (ECF No. 35 at 6 n.2). Yet, Plaintiff's Counsel is well aware that the federal courts favor arbitration, *see Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007), *Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 55 (3d Cir. 2001), and this Court promotes alternate dispute resolution. Indeed, since June 1, 2006, the Local Civil Rules for the Western District of Pennsylvania require mandatory ADR "to make available to litigants a broad range of Court-sponsored ADR processes to provide quicker, less expensive and potentially more satisfying alternatives to continuing litigation without impairing the quality of justice or the right to trial." *See* LCvR 16.2 B.

Plaintiff's final contention is that the claims against Defendant Legend should not be stayed because it is a non-signatory to the Resolution Agreement. In the alternative, she contends that if any arbitration relief is granted, the Court should stay rather than dismiss the claims against Legend. (ECF No. 33 at 10-11). The Court agrees with Plaintiff's second argument. The United States Supreme Court recently held that pursuant to § 3 of the FAA, when any issue in a suit is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded; § 3 does not permit a court to dismiss the case instead of issuing a stay. *Smith v. Spizzirri*, 601 U.S. 472, 473-74, 475-76 (2024) (quoting 9 U.S.C. § 3). Because the Court will grant Sunrise's Motion to Compel Arbitration, it will stay the entirety of the action, including the claims against Legend, even though a non-signatory to the Agreement, as the claims are identical. *See Smith*, 601 U.S. at 473-74, 475-76. C*f. Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121-22 (3d Cir. 1993) (arbitration agreement should be applied to agents or entities related to the signatories). This stay will serve to avoid confusion and possible inconsistent results.

Although Plaintiff argues there may be a question whether Legend was involved with the facility during the time of Plaintiff's employment, she alleges that she was terminated on December 30, 2024, and that Legend assumed management of the facility on approximately May 29-30, 2025. (ECF No. 20 ¶¶ 5, 9-10, 19, 57). Indeed, Plaintiff concedes that these facts weigh heavily against successor liability (ECF No. 38 at 4). At this juncture the Court tends to agree. To the extent that Plaintiff continues to advance this argument, the issue is well within the purview of the arbitration proceedings. *See* Resolution Agreement, ECF No. 28-1 at 2 ("We both agree to use . . . this agreement to resolve any and all legal disputes that may come up between us during or after your employment that arise out of or relate in any way to your employment or its termination

. . . ."). *See also Lloyd v. MBNA Am. Bank, N.A.*, 27 F. App'x 82, 85 (3d Cir. 2002) ("[C]ourts apply a 'presumption of arbitrability' when construing the scope of arbitration clauses."); *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) ("This presumption of arbitrability is particularly applicable where the arbitration clause is broad."). As such, Sunrise's Motion to Stay Civil Action is granted, and Legend's Motion to Dismiss is denied, as moot.

VI. CONCLUSION

In sum, the Resolution Agreement is valid and enforceable pursuant to the FAA. The Court also finds that based upon the allegations of the Amended Complaint and the contents of the Resolution Agreement, the parties intended to be bound by the Agreement, and that all of Plaintiff's claims in the Amended Complaint pursuant to the ADA, PHRA, and the common law concerning her employment and termination, fall within the scope of the Resolution Agreement.

Accordingly, Defendant Sunrise Senior Living Management Inc.'s Motion to Compel Arbitration and to Stay Civil Action is granted. (ECF Nos. 26 & 27).

Legend Senior Living, LLC's Motion to Dismiss Plaintiff's Amended Complaint is denied, as moot. (ECF No. 29).

An appropriate Order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: November 10, 2026
cc/ecf: All counsel of record